Next case called the Gin Raemarriage Sims. Please report, I'm John Wallingham, the attorney for Julie Sims, the petitioner and the appellant. In this case, the factors set forth in the brief, I've never seen any more bizarre set of facts in my over 40 years of trying to practice law. This case got to where we are now because the judge found Julie in contempt of court for not paying $4,000 out of an amount she received from her husband's pension, which was supposed to have been the equity in the marital home. But there was no testimony anywhere ever about whose duty it was to do that or when the decision was made about equity. The court makes a base decision on equity based on statements made by Julie in the hearing about what her house was worth then in 2012 and what her debt was then in 2012. But it all goes back to this strange stipulation and consent order that appears out of nowhere, out of thin air I guess, not signed by an attorney, not filed as a motion to modify. It's a stipulation waiving back child support payments owed by the husband over $20,000 at that time and deeming those to be paid for the consideration of Julie's part of getting this person making less than $1,500 a month. And she gets the chance to write off the kids as her deductions for one year and that's the proposed requirement. Was your client represented at that time, Mr. Wallingham? Judge, I don't know. Because if she wasn't, it does comply, doesn't it? I'm sorry? If she was pro se, then under 137, if she signed the stipulation, it's in compliance. You're talking about Article 137? Yes. Well, we don't know the answer. I don't know the answer to any of those questions. She did sign the document, but she signed it in 2010 and it's notarized in 2011. And she had an attorney at some of these times, but I'm not sure if she had one in 2010 or whether we're talking about 2011. In 2011 she had an attorney, but that attorney didn't sign it. Or how the document was prepared. Like I said, it was initially signed in 2010 and then filed. And the date on the document itself, the date's changed to 2000. Same day, same year. I mean, same day, but a year later in 2011. But whether it's a violation of 137 or not, it's still void. I mean, she and Patricia and her husband cannot agree to a bank child support. And the judge had a duty to uphold the law and not to allow that incentive, which he says he admits he never read, to be in it. The obligation for a child support loan to the husband. He was in a rearage of that support. She waived that claim that he was deemed to have paid it, whatever that means. And that document wasn't short. The judge based his decision on saying that he didn't have any bank child support. At the hearing there was evidence, and the document itself acknowledges that there was evidence of the existence of bank child support that was not paid. Was there an amount that was? No. I think the $21,000 was mentioned, but there was no hearing on that point because the judge found that there wasn't. And in that hearing before I became involved in the case, both the petitioner, Ms. Sims, and her attorney felt that he was current in child support. I mean, there's all kinds of problems with this case. So you're saying there was evidence that he was in arrears by testimony, and then, but there was also evidence that your client said he was in compliance? My client and her attorney both told the court that he, I'm not sure if there was a transcript of that or not, but the testimony was that he was not in arrears in child support as of the time of the prior hearing. But the judge had in his possession the consent order and stipulation which says that he is in arrears in child support. And we deem, hereby deem, the arrears paid. So he had that evidence before him at the time he signed the consent order was performed at the time he had all these hearings. And there's clear evidence that apparently the wife believed that she was bound by that agreement. The lawyer told her she was bound by that agreement. And she testified consistently to what she was told, that there was facts in the evidence to show that the child support was paid. And there is no evidence, and there's a huge amount of evidence that there is no, that the child support was not paid. It was deemed, what's the term they use? Deemed. It was the same, not that it had been paid, Judge, but that it was deemed that the child support was not paid. It was now deemed paid. And that's what the judge had done. The judge admitted he didn't know that there was, I didn't know there was any child support owed. He said he believed Clark had read the stipulation, read the consent order, and he signed it. And then when the motion to reconsider was filed, other things came up. He didn't consider any evidence on it. I've never seen a case, I mean, parents don't have the power to waive that child support. They don't have the power to deem it paid. I'll be sincere, but a single case in Illinois, that's the truth of that. What the action is, that's the truth of that. What I'm confused about, though, is the fact that she testified that it was paid, and there was no evidence that it wasn't paid. But you say there was a lot of evidence that it wasn't paid. And what was that evidence? It's a hearing that, where I've asked the court to reconsider this, the testimony was that she had not been paid. And the document on which the court relies doesn't say that it's been paid. It says that it acknowledges that he is in arrearage for several years, and that it is deemed paid. And that was consistent with what Julie understands the hearing was, and what she said to the court. I'm not sure she said it had been paid, but she believed it had been, in court, deemed paid because of this hearing. My point is it makes no difference. Without regard to her testimony, she can't change the facts. There's not a stop that doesn't apply. It's not an admission against interest because it's not her interest that's being admitted against. It's the children's interest. It is undisputed that the tip was owed, had never been paid, and by this nonsense that somebody allowed her to sign. I'm not sure she had a lawyer or not. The wonder was she signed, did not take away his obligation, and can't. She can't agree with him, take away his obligation, take it back. Am I wrong on that? No, I'm just trying to digest it all. It's very unusual. Because, again, you said she may not have been. If she's not represented, then there's no 137 violation. Well. Right? I'm not sure about that either, Judge. Because the parties did sign, and that's what 137 says. But there's no motion with it, and the consent order was not signed by either side, and it was the document that the judge signed. So it appears to me that it was 137 violation, but I don't know if that makes any difference. Whether it was or not, the order the judge entered was void. He cannot deem child support paid. It's impossible. He doesn't have the authority to do that. The parties don't have the authority to do that. It can't be done. You know, we've had a situation recently. He's over $20,000 in child support, and she's threatened with going to jail for not paying him some unamounted money. No proof on that. It's the most upside-down case I've ever been involved in. It looks like I handled things in the beginning. I don't see how somebody got this screwed up, and I didn't this time. The law is, to me, extremely simple. The court doesn't have the authority to deem child support paid. The husband and wife don't have the ability to enter into an agreement to deem it paid. Whatever she said is irrelevant. It's the Supreme Court's case cited here. I didn't even use the book. It was two citations. Implicit, we cited the appellate court decision. That was partially reversed and partially affirmed by the Supreme Court, 123-161. And the Joslin case, the citation to that is the... I don't know what that says. So there's nothing in the record that indicates that an attorney prepared or submitted this? Correct. And is there anything in the record indicating that either of these parties were represented at the time of the sign? I'm not sure it's in the record, Judge. And I don't know. I mean, it's extremely complicated by the date of the document. It's dated clearly 2010. Julie testified that she did not sign that document in 2011. It's verified by a notary in 2011. She said she did not sign it in 2011, and she never appeared in front of a notary. And it's also, I think, obvious that Judge Campanello signed it in 2011, right? Yes. So question about that. But I don't know. On the record, the record just docked entries, and there's no... I was surprised when I saw this. Well, I'm confused that nobody knows whether or not these parties were represented at the time. Shouldn't that be in the record? It should be. I mean, you'd have to have a withdrawal. And they were, in fact, or at least we know or you state that she, Mary West or whoever. She was the attorney that preceded me, but I don't know when she began or when she... Okay. But the record would show... The document just shows she was involved in the case sometime in 2011. I'm not sure she was involved at the time this was, the judge signed this or not. And I don't believe she was involved in 2010. Well, then we can... If that can't be proven, then I think we have to presume that the parties were representing themselves and then at least that there's no sanction or 137 says if the parties are unrepresented, then they just have to sign it. I understand what the rule says. I don't know how you get... There's no pleading there. This is quoted from some other paper. But nobody... Well, it says document. I mean, it is kind of vague. 137 is kind of vague as to what... I mean, it seems to cover almost everything because it does... But the proposed order should have been signed by an attorney as well. The proposed order is what the judge signed. It says every pleading motion and other document. My point is, Judge, there are two documents there. There's this stipulation that deems that get paid. A party who is not represented by an attorney shall sign his pleading motion or other document. And nobody signed a consent order or a motion asking for it to approve the consent file. Lawyers don't have to sign orders, but they're usually placed on there when they approve it. And I've never seen an order entered without a motion. And there's no motion. I keep trying to find out who did that. And I couldn't find it. There is no record of a motion being filed asking for it to be approved. So will we have a copy of the record that you reviewed? Yes. Okay. And there's nothing... I couldn't find it. I want to get away from the issue. Okay. Go ahead. The issue is that the parties can't do that. The husband and wife, and the law is clear for like 100 years or so, that the husband and wife can't agree to set aside the back of the child support. They can't decide to modify it. They can't decide to change it. They can't decide the case. The law is talking about the wife didn't want the husband to have visitation. She agreed to waive support so he wouldn't visit the kids. The kids were all fine with that. The court said they can't do that. In the decree, the kid was ordered to receive support for college payments by his father. The father got together. He paid her more money. They agreed that he wouldn't have paid the child's college expenses. And the court said they can't do that. There's not a single case that says that the parents can do that. And this needs to be sent back to the trial court with the direction that this is void. There has to be a hearing on whether there is or isn't owed child support. And the contempt thing, the contempt decision, doesn't show any confirmation of willful regard on her part at all. She said she had income of $1,500 a month, supporting three kids, most of the time without any child support payments. And that she didn't, there's no indication that she had the money to pay it at any time. The judge said, well, you had the money when you got the $14,000 three or four years ago. And therefore, you're willfully in violation because you didn't pay it then. The order doesn't even say she has to pay it then. And the order says the money comes to her and any equity that exists at that time, out of that he gets half of it and half of the equity. The judge found in 2012 the equity was $8,000 in order for her to pay $4,000. It was never determined prior to that time. And there's no determined, nothing in the record that shows how he or she, she said she had a household worth about $40,000, she owed about $31,000, about $32,000, something like that. And that's how he came up with the figure. There's no evidence that she had the ability to pay it and didn't pay it in any sense to Jim. The tent needs to be set aside in case they need to land it. And this is his order. Vacating, waiting for all that has shots for it has to be set aside. Anything else? I don't think so. Thank you, counsel. Counsel? Good afternoon. Good afternoon. I'm Matt Foster. I'm counsel for the respondents. I was trial counsel. I can make clear that either of us were the attorneys when the stipulation of the order were entered. That we do know. Either me or Mr. Womack were the attorneys of record or attorneys for the parties at the time. I'll try to dispose of the issues as quickly as I can. I'll start with the Rule 137 issue, not that I would think that is the most important issue of the three, but I think it could be easily disposed of. As has been mentioned, the parties did sign both the stipulation and the consent order. There's no mention in the record that I'm aware of that there was counsel of record. So I think that would satisfy Rule 137 as to signing other documents, pleadings, however you want to consider these documents, the stipulation of the order. So the parties themselves did sign both the stipulation and the consent order. Consent order was approved by the court. So I think Rule 137 would have been satisfied. I did contend in my brief that the issue was waived, considering it was never raised at the trial courts. It was only raised first time on appeal. We were basically given no opportunity to respond in the trial courts. There was no motion for sanctions. There was no request at the trial courts that there was any error and the error needed to be corrected. But Rule 137 does make clear that if it's not signed by an attorney of record, the court can ask the attorney of record to promptly sign. So I think even if there was an attorney of record given the opportunity to correct the error, I think it could have been corrected, but it never brought to the attention of the trial court at all. So there was no opportunity to correct it. It was only first brought to this court's attention on appeal. But I do believe the spirit of Rule 137 was satisfied. The purpose of Rule 137 is to avoid frivolous pleas, frivolous lawsuits. Well, I don't believe that that was the case here, and I don't believe the contention that Counsel for the Petitioner is making has anything to do with what Rule 183 said. Well, he does say that it's not well founded in the law. So, I mean, that is an argument definitely that would support the purpose of 137. Even if so, Your Honor, Rule 137 doesn't state that the lack of a signature by an attorney of record makes it void. No, it does not. It does not. So I don't think you can make that jump from a lack of an attorney's signature when it wasn't entirely clear that there was an attorney of record. Well, it's not our job to determine that. I mean, it's not either of you are arguing that there was. No, and that's why I want to move past that. But I do believe Rule 137 would have been satisfied if the parties were not represented by counsel. They didn't back sign both the stipulation and the order. Moving on to the stipulation and the order and what Counsel for the Petitioner wants to argue is a waiver of child support. I disagree, and I put in my brief and we argued at the trial court level. I don't know that there was a waiver of support. The stipulation in the consent order makes clear there was a satisfaction of the arrearage. There is mention. We can see there was mention and acknowledgment that there was an arrearage. There was no mention of how much of an arrearage existed. There's been no determination how much the arrearage was. But we do know in the stipulation and in the consent order, it makes mention of satisfaction. The parties did not waive or forgive any support or bargain away the support. They made clear in their documents this was a method of satisfaction. What was the method of satisfaction? That it was the modification of the tax exemptions that my client would have been entitled to claim tax exemptions. He would have received. Isn't that kind of like bargaining in a way? I would disagree, Your Honor, because it would have been consideration and monetary consideration, financial consideration that the petitioner would have received. And without any determination of how much the arrearage was. It could have satisfied it. It could have satisfied it. And until there's evidence presented to the contrary, we would have to assume it's anything. Could have been $5 or $50,000. Could have received a windfall from this. But going further from that question, Your Honor, the authority cited by the petitioner, this set of circumstances can't be lumped in with those set of circumstances. The Cox case, the Miller case, and the Blissett case are all circumstances involving a waiver of visitation. A barring of further litigation. Basically hampering parties from pursuing rights or exercising rights on behalf of their children. This wasn't a case where my client waived visitation or forgo visitation in exchange for dissatisfaction of the back child support. In fact, just the opposite. The parties modified the visitation to give him more visitation. And in fact, stipulation, if not the consent order, makes it known he would take on an increased financial responsibility because of that as well. So that wouldn't be anything like the foregoing of visitation in the cases that are cited by the petitioner. The parties did not stipulate that in exchange for this satisfaction of child support, in exchange for her being able to claim the children, that they could modify child support in the future. Or the parties would be barred from coming back to litigate issues or seeking a modification like the cases that are cited by the petitioner. So I think they're easily distinguishable. So I don't think it's fair to lump in this set of circumstances into those cases that are cited by the petitioner. I think the parties can agree on how an arrearage is satisfied. I don't think that would violate public policy. And as the trial court noted, there was no language to the effect that there was a waiver of any sort. So I believe what the court should also consider is what I cited in my brief. The paramount concern of child support orders is to protect the children's best interest. And I think the modification of visitation to increase visitation, the fact that he would assume a greater financial responsibility, and the fact that the petitioner did in fact receive financial consideration for the child support arrearage, I think the children's best interest would have been protected and the paramount concern would have been satisfied. What I have to strongly disagree with is there was no evidence presented in the trial court about any amount of arrearage. This $20,000 figure, there was no testimony whatsoever about the arrearage, except at the hearing when the petitioner sworn under oath stated there was no arrearage, that he was currently in support. I don't know how the trial court would be obligated to look further than that. We all know the order says what it says, that an arrearage existed at that time and it had been satisfied. In the face of sworn testimony from the petitioner, from the abogee, the person who is receiving the support, in the face of testimony that she has received the support and that the respondent is current, I think it would be absurd to have the trial court look further into that, that, oh, I don't believe you. I think the testimony of the petitioner is damning, if nothing else, because she makes clear that the satisfaction of the arrearage has been done. And again, beyond that, the only mention of $20,000 figures or anything else are just in pleadings or just in arguments. There's never been any testimony, any evidence presented about that. So, again, I go back to the arrearage would have been satisfied, for all we know, by the terms of the order and the stipulation. Going on to the contempt issue, as I set out in my brief, and I think the authority would support me in this, my client as a moving party in the contempt proceeding has a burden to present that an obligation existed and that there was noncompliance with the obligation. I think that was made clear in the testimony of my client and, in fact, the testimony of the petitioner, that there was an obligation that she was to account for the equity from the funds that she received from my client's retirement account by obtaining an appraisal. Is there language about who's supposed to pay for the appraisal, how that's supposed to come about? I believe it's set forth in the settlement agreement that the petitioner was to obtain, she shall obtain an appraisal. And you're saying that that then presupposes that she's paying for it? Paying for the appraisal? Yeah. I would assume so if she gets her responsibility to obtain the appraisal. And what I would also want the court to keep in mind is she received it, and according to the testimony and the evidence presented in the trial court, she received the funds almost immediately after the dissolution. She had the funds in hand. So any arguments that it would have been my client's responsibility to take those funds away and account for those, that wouldn't make much sense since she had the funds in hand at that time. She can make the demands that, hey, you've not satisfied the obligation, you haven't accounted for the equity, but he can't go and physically remove the funds from her. So the obligation would be on the part of the petitioner to obtain the appraisal pursuant to the agreement and the order to account for the equity, and she didn't do that. It was not disputed whatsoever that she did not do those things. So I believe my client's burden was met by it, by the testimony of both parties, that the obligation existed and there was noncompliance. I believe, according to the authority I've cited in my brief, that then the burden would shift to the petitioner to present evidence of either compliance, the defense of compliance, or justification for noncompliance. And she presented neither. It was noted by the trial court how disappointed he was that there was no opening statement, closing argument, arguments really presented as to compliance or justification for noncompliance. Now, it's set out in the petitioner's brief that her financial inability should have been considered by the courts, and that should have been reasoning for either a setoff or a finding that she wasn't in contempt or at least no sanctions imposed. However, as the authority I cite in my brief, if you're going to use the justification for financial inability, I think you need more than just general testimony, which if it's a bit convoluted, I would concede that the hearing below was broken up into the trial court phase of it in the first part of the hearing, and then the contempt phase of it was in the second part of the hearing. In the contempt phase of the hearing, there was no testimony except maybe of the general nature about her financial inability. I think even in the child support phase of the hearing, there was nothing but general testimony about her financial circumstances. In the cases I cited, the simple fact that you allege financial inability isn't enough. They want to look further. And in the cases I cited, if you make no efforts, just because you have no money, you can't have it both ways. And it's clear from her testimony she made no efforts whatsoever. It's not as if she said I don't have the financial – I have no financial ability to satisfy this obligation. I've tried every means I can. She presented no testimony to that effect. So I don't see that the trial court did anything but exercise its discretion in finding her in contempt and imposing sanctions as it saw fit. The distinction about whether she had the financial ability at the time she received the funds or at the time of the hearing, I don't know that that really matters much. I think, in fact – I think that favors our arguments, Your Honor. Her financial ability at the time she received the funds, it's clear. She had the funds. She received the funds. She had the ability to satisfy her obligation at that time regardless of financial inability. At the time of the hearing, she presented no justification as to why she couldn't satisfy it at that point in time either. So I think the finding of contempt was justified by the court. I think the burden on the part of my client was met, and any burden that would have shifted to the petitioner was not met for compliance or justification. Thank you. Any questions by the court? I don't believe so. I would rest on any other arguments not presented today that are presented in my brief. Absolutely. Thank you very much. Counsel? If we could talk about the contempt first briefly. There was no testimony in the record, and there's nothing in the documents that show who had the duty to, for example, determine the existence of any equity or when that was done. The only thing in the record, the judge asked her what she owed on the house and what she thought the house was worth now, and she answered those questions. And that's how he determined that there was $8,000 equity, and that as of 2012, she owed her husband $4,000. But if the decree or the settlement required that at the time that the money was paid to her out of his pension, there's no indication in the record period as to what the equity was, if any, as of that time. And he also required him to give her a quit claim deed. The record's clear that that was not done either. And there's no indication that she had any funds and that she willfully and wantonly or consummationally failed to pay that which she had. But I can't get away from this. Counsel said that there was no agreement here. This is not like this other cases. Then he says the consideration she got for – she, the mother, got for the transaction was the right to deduct the children as deductions, claim them as pendants for tax return purposes. And that for that benefit, she waived past child support payment owed by her husband to her, which is recited in the document. He is in arrearage. And now by doing this transaction here, the arrearage is waived. And that's exactly what the other cases were, the case where the mother agreed to take $10,000 or so and do away with the father's obligation to pay the college. Well, you know, I understand that you can't barter child support like that. And they did. But what I'm really muddled with is, you know, we're supposed to be determining errors of the court, and this looks like a lot of attorney errors. There's a lot of attorneys. Yeah. And what is the court supposed to do? First of all, ring the darn bell. Well, that would have helped, but there never was any monetary amount. I mean, do we know if there was the court didn't know if there was $5 owing or 15, or maybe he paid her $5 that was owing? And she then gets up and says it's satisfied. Not then. That was at some point later on. The time that he was in business. He comes to the court in his office. He picks up and looks at the size of the court file. And then later on in her hearing, she comes out. And her lawyer, entirely insane, tells her that she's bound by that document. And her lawyer would be who? Ms. West, I think. Okay. This one's insane, too, but not that time. So she answers the question. He paid, but she thinks she's obligated to because of the contract. But the point is the judge should have decided in the first place. It's his job to take those hits. And you've got an iron worker who quits his job, comes back in to cut the amount of money that was just paid for a long period of time, comes into court with a document with a questionable – the date's questionable. The agreement's questionable. Nobody knows what the agreement's for. And the person who's supposed to check the children is Judge Kavanaugh. And there's nobody checking the students. And there's nobody – and then we hear this nonsense, total nonsense from the defense that, oh, this is like any other transaction. It's not like any other transaction. Child support was owed, and they can't reverse it in the past. They can't go back and undo it. And they can't change the terms. And they can't deem things – the lawyers make mistakes. There's no question about it. Why they would say – tell the client to say something that's not true is insane. But it doesn't make any difference. There was no authority there in the first place to enter into that ridiculous consent agreement that weighed back child support. And that agreement is void. It is absolutely, totally void because nobody had the authority to do that. And the judge shouldn't. The judge had an obligation to protect the interests of the children and totally abandoned that obligation. And we've got a deadbeat – a deadbeat Ted not paying child support. And then the mother should actually be going to jail in this court. You can't change the facts. What counsel said in his brief was that this – stipulation of consent are no different than any other order regarding a support for a career issue. And then it goes on to say that she got – the patient received the benefit of being able to pay the minor children for tax purposes when she wouldn't have before. And so the mother cuts the deal. I get to pay less income tax. My kids go without support. And the mother can't do it. And that's what the document said. And it should never have been there in the first place. And yes, I can understand how Jim let that happen. He's busy. People bring stuff to him. He trusts people who bring stuff to him. Well, in this case, we don't know who it was that he trusts, but we don't know who did it. But it's still wrong. It's still in his voice from the beginning. That thing never – it never existed. That's the agreement. Thank you. Thank you. I appreciate it. We appreciate the excellence and brief of counsel. We can figure this out. It's an order in due course. There will be no further oral arguments except before the court is adjourned.